UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

FONTRISE CHARLES,

       Petitioner,                                 Case No. 13-50937
                                                                Honorable Thomas L. Ludington

v.

UNITED STATES OF AMERICA,

       Respondent.

_____/

**OPINION AND ORDER DISMISSING PETITION TO QUASH IRS SUMMONS**

Fontrise Charles maintains a bank account with Chemical Bank in Belmont, Michigan. According to the government, more than $75,000 worth of "suspicious" tax refunds were deposited into Charles's account after the 2011 and 2012 tax years. Originally unaware that Charles owned the account, the Internal Revenue Service (IRS) issued a summons to Chemical Bank in April 2013 to learn the account owner's identity. Once the IRS discovered Charles owned the account through the April summons, it issued a second summons to Chemical Bank in June 2013 requesting the production of related documents and information. Soon after, Charles brought this action to quash the second IRS summons. Based on what follows, Charles's petition to quash will be denied.

**I**

**A**

The IRS is conducting an investigation into hundreds of income tax returns that claimed a total of approximately $2 million in refunds for tax years 2011 and 2012. According to the government, "approximately $76,850 of these funds were deposited into an account at Chemical

Bank controlled by the petitioner, Fontrise Charles." Resp't's Resp. 3 (citation omitted), ECF No. 11.

Special Agent Rodney Urlaub was assigned to conduct the IRS investigation into Charles's account. Urlaub Aff. ¶ 1, *attached as* Resp't's Resp. Ex. A. However, at first, the government did not know who owned the account into which the $76,850 was deposited. Accordingly, Agent Urlaub "personally served" an initial administrative summons (Form 2039) on Chemical Bank in Belmont, Michigan, seeking "the identity of the owner(s) of the account at Chemical Bank which ended in 590." *Id*. ¶ 4. Dated April 4, 2013, this first summons (the April Summons), requested the "[n]ames, address, social security number and/or employer ID number, phone number, and other bank signature card information" connected to that specific Chemical Bank account. *See* April Summons 1, *attached as* Resp't's Resp. Ex. A. One week later, on April 10, 2013, "Chemical Bank's Loss Prevention Clerk, located in Midland, Michigan responded to the summons by identifying the owner of the account as Fontrise L. Charles." Urlaub Aff. ¶ 5.

After learning that Charles owned the account in which more than $75,000 had been deposited, Agent Urlaub "issued a summons to Chemical Bank for more specific information on Ms. Charles' account . . . ." *Id*. ¶ 6. Dated June 6, 2013, this second summons (the June Summons), "required the bank to produce, *inter alia*, account, loan, safe deposit and other financial records the bank maintains on the accounts at issue." *Id*; *see also* June Summons 1, *attached as* Pet'r's Supp. Br. Ex. A. Agent Urlaub indicated that the records sought through the June Summons would demonstrate "whether Ms. Charles directed the IRS to deposit refunds into her account, whether she withdrew those funds, and if other individuals were involved in receipt of the refunds generated by the returns" he was investigating. Urlaub Aff. ¶ 6.

Section 7609 of the Internal Revenue Code requires that "notice" be given to any person "who is identified in [a] summons" that is delivered to a third party for the production of records relating to that identified person. 26 U.S.C. § 7609(a)(1). Such notice "shall be accompanied by a copy of the summons which has been served and shall contain an explanation of the right under subsection (b)(2) to bring a proceeding to quash the summons." *Id*. "Such notice shall be sufficient if . . . mailed by certified or registered mail to the last known address of" the person entitled to notice. 26 U.S.C. § 7609(a)(2). As foreshadowed by subsection (a)(1), subsection (b)(2) explains the right to bring a proceeding to quash an IRS summons; in general, "any person who is entitled to notice of a summons under subsection (a) shall have the right to begin a proceeding to quash such summons." 26 U.S.C. § 7609(b)(2)(A).

Pursuant to § 7609—because Charles was named in the June Summons, which sought the production of documents that related to her—Agent Urlaub provided notice of the June Summons "by sending [Charles] a copy of the summons . . . by certified mail to her last known address, on June 7, 2013." Urlaub Aff. ¶ 7. Charles signed for the materials on June 10, 2013. *Id*.

**B**

Three days after Charles received notice of the June Summons, she filed a petition to quash it. Pet'r's Pet., ECF No. 1. In that petition, Charles indicates that the IRS acquired information concerning her Chemical Bank account in violation of the Right to Financial Privacy Act (RFPA). She also alleges that the June Summons is "a part of a scheme or plan to obtain financial information in violation of the [RFPA], and, as such, was issued in bad faith." *Id*. ¶ 8.

According to Agent Urlaub, he has not received an official response to the June Summons, but "[a] representative from Chemical Bank advised [him] that the Bank received the

summons and is waiting for the outcome of [Charles's] petition to quash before producing the responsive documents in its possession." Urlaub Aff. ¶ 9.

On November 14, 2013, the Court conducted a telephonic status conference with counsel.[1] At that point, the parties communicated their respective positions, along with the fact that this precise issue was recently adjudicated twice by federal courts in the Western District of Michigan. After the conference, the Court directed supplemental briefing from the parties.

Charles filed her supplemental brief, supporting her petition, on November 25, 2013. *See* Pet'r's Supp. Br., ECF No. 10. She first argues that the government failed to adhere to the requirements for effectuating service of the June Summons on Chemical Bank. *Id*. at 1–2. According to Charles, "[i]f the summons was not properly served, then it cannot be enforced." *Id*. at 1. Aside from "the possible lack of proper service," Charles opposes the June Summons because she claims "it was part of a two-step process the Government has been using to intentionally violate the [RFPA]." *Id*. at 2.

The government filed its responsive brief on December 9, 2013. *See* Resp't's Resp. It first emphasizes that the June Summons was properly served, and that it has satisfied its prima facie burden of demonstrating proper service "through the Declaration of Special Agent Urlaub." *Id*. at 8. Moreover, the government argues that Agent Urlaub was "conscientious" about "adher[ing] to the notice provision of Section 7609(b) regarding the June Summons which . . . demonstrated that he conducted his investigation in good faith." *Id*. at 13. Four days after filing its responsive brief, the government filed a supplemental brief to advance additional authority in opposition to Charles's petition to quash. The authority advanced is simply an "Opinion and

---

[1] The case was originally assigned to United States District Court Judge Paul D. Borman. It was later reassigned to this Court on October 24, 2013. *See* Order Reassigning Case, ECF No. 7.

Order" denying a nearly identical "petition to quash an IRS summons to Fifth Third Bank." Resp't's Supp. Br. 1, ECF No. 12.

Finally, Charles filed a reply to the government's response on December 16, 2013, in which she reiterates her arguments for why the June Summons should be quashed. *See* Pet'r's Reply 1–5, ECF No. 13.

## C

The parties have emphasized, particularly the government, that Charles attempted to quash two other IRS summonses that were served on two other banks where she maintains accounts—PNC Bank and Fifth Third Bank in Grand Rapids, Michigan.

Charles's petition to quash the summons served on PNC Bank was heard before the Honorable Robert Bell, a District Court judge for the Western District of Michigan. Judge Bell referred the petition to United States Magistrate Judge Joseph Scoville, who authored a report recommending the petition to quash be denied. *See Charles v. United States*, No. 13-MC-46, 2013 WL 5266515, at *2 (W.D. Mich. June 28, 2013). Judge Bell remanded the case to Judge Scoville to consider an "issue of first impression," specifically, whether the IRS's "no notice" summonses "were improper because they were not issued upon a 'numbered account.'" *Charles v. United States*, No. 13-MC-46, 2013 WL 3894984, at *1 (W.D. Mich. July 26, 2013). Judge Scoville then authored a second report, also recommending that the petition to quash be denied, because the government had satisfied its prima facie burden, and Charles did not "disprove the elements of the *prima facie* case or . . . demonstrate that judicial enforcement of the summons would otherwise constitute an abuse of the court's process." *Charles v. United States*, No. 13-MC-46, 2013 WL 6404632, at *4 (W.D. Mich. Aug. 22, 2013). Judge Bell adopted this second report, along with Judge Scoville's recommendations, and Charles's petition to quash was

denied. *See Charles v. United States*, No. 13-MC-46, 2013 WL 5771153 (W.D. Mich. Oct. 24, 2013).

Charles's petition to quash the IRS summons served on Fifth Third Bank was heard before the Honorable Janet Neff, also a District Court judge for the Western District of Michigan. Judge Neff referred Charles's petition to United States Magistrate Judge Ellen Carmody, who authored a report recommending that Charles's petition be denied. Judge Carmody indicated that she "learned that a nearly identical issue involving the same petitioner but a different bank was pending before the Hon. Robert Holmes Bell," and that she reviewed "Judge Scoville's initial report and recommendation, Judge Bell's order remanding the case . . . for consideration of issues of first impression, Judge Scoville's second report and recommendation that the petition to quash summons be denied, and Judge Bell's order approving and adopting the second report and recommendation." Report & Rec. 1, 2, *Charles v. United States*, No. 13-mc-49 (W.D. Mich. Nov. 27, 2013). Judge Carmody concluded that the facts in both cases were "identical," and she found Judge Scoville's reasoning "to be correct and cogent." So, based on the same reasoning adopted by Judge Bell in the first case, Judge Carmody recommended Charles's second petition also be denied. Judge Neff agreed, and without further explanation, she adopted Judge Carmody's report and recommendations and denied Charles's petition to quash the IRS summons served on Fifth Third Bank. *See* Op. & Order, *Charles v. United States*, No. 13-mc-49 (W.D. Mich. Dec. 13, 2013), *attached as* Resp't's Supp. Br. Ex. 1.

## II

Section 7601 of the Internal Revenue Code broadly defines the IRS's statutory duty and powers of investigation. Specifically, § 7601 provides that "[t]he Secretary shall, to the extent he deems it practicable, cause officers or employees of the Treasury Department to proceed, from

time to time, through each internal revenue district and inquire after and concerning all persons therein who may be liable to pay any internal revenue tax . . . ."  26 U.S.C. § 7601(a).  To determine the correctness of any return or to decide the liability of any person for any internal revenue tax, the IRS may examine any potentially relevant books, papers, records, or other data; issue summons as to any person "the Secretary may deem proper" to appear and produce relevant books, papers, records or other data; and take such testimony, under oath, "as may be relevant or material to such inquiry."  26 U.S.C. § 7602(a).  A summons may issue under § 7602(a)(2) for "the purpose of inquiring into any offense connected with the administration or enforcement of the internal revenue laws." § 7602(b).

As indicated briefly above, § 7609(b) provides a taxpayer with the right to petition the Court to quash a summons issued under § 7602, provided that the taxpayer filed the petition to quash within 20 days of receiving notice of the summons.  *See* § 7609(b)(2)(A) ("any person who is entitled to notice of a summons under subsection (a) shall have the right to begin a proceeding to quash such summons not later than the 20th day after the day such notice is given in the manner provided in subsection (a)(2).").

In opposing a petition to quash an IRS summons, the government bears the burden of demonstrating the following four prima facie elements: (1) that the summons was issued for a legitimate purpose; (2) that the inquiry may be relevant to that purpose; (3) that the information sought is not already within the IRS's possession; and (4) that the administrative steps required by the Internal Revenue Code have been followed, focusing particularly on the IRS's determination that "further examination" is "necessary" and that the taxpayer has been notified "in writing to that effect."  *United States v. Powell*, 379 U.S. 48, 57–58 (1964).  This prima facie burden is often carried through the affidavit or sworn declaration of the IRS officer who issued

the summons and is seeking enforcement.  *United States v. Will*, 671 F.2d 963, 966 (6th Cir. 1982) (citation omitted).

Once this prima facie showing is made, "the burden shifts to the taxpayer to demonstrate that enforcement of the summons would be an abuse of the court's process."  *Id*.  As explained in *Powell*, "[s]uch an abuse would take place if the summons had been issued for an improper purpose, such as to harass the taxpayer or to put pressure on him to settle a collateral dispute, or for any other purpose reflecting on the good faith of the particular investigation."  379 U.S. at 58.  "The burden of showing an abuse of the court's process is on the taxpayer," *id*., and this burden has been described as a "heavy" one.  *United States v. Feminist Fed. Credit Union*, 635 F.2d 529, 530 (6th Cir. 1980).

### III

Charles does not argue that the materials requested in the June Summons are not relevant to the IRS's investigation, or that the information sought is already within the IRS's possession.  She first alleges that the government did not follow the "administrative steps required by the [Internal Revenue] Code" for effectuating service on a third-party recordkeeper such as Chemical Bank.  *Powell*, 379 U.S. at 58; *see also* 26 U.S.C. § 7603(b)(2)(A) (establishing that a third-party recordkeeper includes "any bank").  Even if service on Chemical Bank was proper, Charles argues that the June Summons should not be enforced because it was based on information "improperly obtained by the IRS through the use of the 'no notice' summons" in April (the April Summons).  Pet'r's Supp. Br. 3.  Because Charles's respective arguments are without merit, her petition to quash the June Summons will be denied.

**A**

Charles first argues that the government's service of the June Summons on Chemical Bank was deficient because Agent Urlaub served Chemical Bank "by fax." Resp't's Reply 1. Because "the summons sought to be enforced was not served on the bank by certified mail or personally served on the bank," Charles concludes that "there was no service of the summons on Chemical Bank." *Id*.

And although Charles is correct—§ 7603(b) requires that third-party recordkeepers such as Chemical Bank be served in person or by certified mail—Charles lacks standing to raise the issue. The legislative history of § 7609 indicates that Congress intended that "[t]he third-party record keeper could (if it chose to oppose enforcement of the order) assert such defenses as may be available to it, just as under present law." S. Rep. 94–938, 370 (1976), *reprinted in* 1976 U.S.C.C.A.N. 3438, 3799. The legislative history also indicates that Congress intended the interested party—Charles in this case—to "have standing to raise other issues which could be asserted by the third-party record keeper, such as asserting that the summons is ambiguous, vague or otherwise deficient in describing the material requested, or that the material requested is not relevant to a lawful investigation." *Id*.

Notably, however, Congress intended to "ma[k]e clear" that "the noticee will *not* be permitted to assert as defenses to enforcement issues which only affect the interests of the third-party record keeper, *such as the defense that the third-party record keeper was not properly served with the summons . . . .*" *Id*. at 370–71 (emphasis added); *see also Wright v. United States*, 964 F. Supp. 336, 338 (M.D. Fla. 1997) ("§ 7609 was intended to permit the taxpayer to raise issues that relate to an interest in nondisclosure of information, but not to allow the taxpayer to assert issues that are of meaningful concern only to the third-party recordkeeper . . . it

can make no real difference to the taxpayer whether First Union was served by mail or in person."); *King v. United States*, 684 F. Supp. 1038, 1041 (D. Neb. 1987) (noting that taxpayers "will not be permitted to assert as defenses to enforcement issues which only affect the interests of the third-party record keeper."). Charles attempts to attack the service on Chemical Bank based on an issue that is only of concern to Chemical Bank and which has nothing to do with the content of the June Summons or the relevance of the materials it seeks. Accordingly, she lacks the requisite standing to raise the issue.

B

Unlike her first point, Charles's other arguments were squarely addressed by both District Courts in the Western District of Michigan. Charles first indicates that the government has not met its prima facie burden under *Powell* because it utilized a "no notice" summons in April (the April Summons). As Judge Neff concluded, and Judge Bell before her, whether the June Summons was based on an improper "no notice" summons is irrelevant; the only question is whether the June Summons satisfies the four prima facie elements set forth in *Powell*. Here, those requirements are satisfied.

First, the government must show that the summons was issued for a legitimate purpose. In his affidavit, Agent Urlaub indicated that the June Summons was issued to obtain information "relevant to [his] investigation," and that the information sought in the June Summons would help the IRS "identify assets subject to seizure [as] well as possible co-conspirators or witnesses." Urlaub Aff. ¶ 6. Certainly, acquiring information to further an IRS investigation is a legitimate purpose for issuing a summons. And, as established by the Sixth Circuit in *United States v. Monumental Life Ins. Co.*, 440 F.3d 729 (6th Cir. 2006), the government's requisite showing "is generally made by the submission of the affidavit of the agent who issued the

summons and who is seeking enforcement." *Id*. at 733 (citation omitted). So the first *Powell* requirement is satisfied.

Agent Urlaub also indicated that the inquiry may be relevant: "The summonsed bank records will show whether Ms. Charles directed the IRS to deposit refunds into her account, whether she withdrew those funds, and if other individuals were involved . . . ." Urlaub Aff. ¶ 6. Charles does not contest the relevance of the materials sought by the June Summons, and the second *Powell* requirement has been met. In satisfying the third *Powell* element, Agent Urlaub indicated that when he issued the June Summons, he "knew only the account number of the bank account where the suspicious tax refunds had been deposited." Resp't's Resp. 11 (citing Urlaub Aff. ¶¶ 3–4). Charles did not attempt to rebut this assertion, and therefore the government has shown the information it seeks is not already in its possession.

The fourth *Powell* element requires the government to demonstrate that the administrative steps required by the Internal Revenue Code have been followed, focusing particularly on the IRS's determination that "further examination" is "necessary" and that the taxpayer has been notified "in writing to that effect." *Powell*, 379 U.S. at 58. Agent Urlaub indicated in his affidavit that "[a]ll administrative steps required by the Internal Revenue Code for issuance of the summons were taken." Urlaub Aff. ¶ 8. Aside from contesting service of the June Summons on Chemical Bank—for which she lacks standing—Charles argues that the administrative steps were not satisfied because Agent Urlaub issued a "no notice" summons instead of a "John Doe" summons in April 2013. *See* Pet'r's Reply 2. But just as Judge Neff and Judge Bell concluded, even if the April Summons was "not appropriate" because it was a "no notice" summons, the argument that an IRS summons must be quashed "if it is based in any way on information improperly obtained" is an "unsupportable" assertion. *Charles v. United*

*States*, No. 13-MC-46, 2013 WL 6404632, at *2 (W.D. Mich. Aug. 22, 2013). Indeed, whether the proper administrative steps were taken concerning the April Summons does not bear upon whether those steps were satisfied with the June Summons. Charles's argument on this point is without merit, and the government has carried its prima facie burden under *Powell*.

Charles's next argument is that, because the government utilized a "no notice" summons in April 2013 to obtain information it referenced in the June Summons, the June Summons was an "illegal" use of IRS authority and therefore could not have been issued in good faith. Pet'r's Supp. Br. 3. Agent Urlaub specifically indicated that at the time he issued the June Summons, he "believed that it was proper . . . to issue . . . 'no notice' summonses pursuant to Section 7609(c)(2)(C) . . . ." Urlaub Aff. ¶ 12. And, as the two courts in the Western District of Michigan recognized, even if Agent Urlaub did act in bad faith when he issued the April Summons (a contention that is dubious at best), "[t]he 'fruit of the poisonous tree' doctrine has never been applied in this context." *Charles v. United States*, No. 13-MC-46, 2013 WL 6404632, at *4 (W.D. Mich. Aug. 22, 2013).

As a result, Charles has not demonstrated that the June Summons was "issued for an improper purpose . . . or for any other purpose reflecting on the good faith of the particular investigation," *Powell*, 379 U.S. at 58, and thus she has not carried her "heavy" burden of establishing that "enforcement of the summons would be an abuse of the court's process," *Will*, 671 F.2d at 966.

## III

Accordingly, it is **ORDERED** that Charles's petition to quash, ECF No. 1, is **DENIED**.

This is a final order and closes the case.

Dated: April 15, 2014                              s/Thomas L. Ludington
                                                   THOMAS L. LUDINGTON
                                                   United States District Judge

---

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on April 15, 2014.

                          s/Tracy A. Jacobs
                          TRACY A. JACOBS

---